**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

NICOLE MARIE TRACEY,

        **Plaintiff,**

                                 **Civil Action 2:14-cv-1379**
**v.**                               **Judge Gregory L. Frost**
                                 **Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF SOCIAL SECURITY,

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Nicole Tracey, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Social Security Disability Insurance Benefits and Supplemental Security Income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 17), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND[1]

Plaintiff filed her applications for benefits on March 24, 2011, alleging that she has been disabled since November 2009 due to depression, anxiety, and a sleep disorder. (R. at 222-28.) She filed an application for Supplemental Security Income on April 11, 2011. (R. at 229-35.)

---

[1]For the sake of brevity, the Undersigned provides a brief outline of the procedural history and will discuss the record evidence as necessary to address Plaintiff's contentions of error within the Analysis Section.

Plaintiff's applications were denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  Administrative Law Judge Thomas L. Wang (the "ALJ") held a hearing on March 20, 2013, at which Plaintiff, who was represented by counsel, testified.  (R. at 84-109.)  Vocational expert Walter B. Walsh (the "VE") also testified.

On April 22, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 56–67.) The ALJ first found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015.  (R. at 58.)  At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since her alleged onset date of November 22, 2009.  (*Id.*)  At step two, the ALJ found that Plaintiff had the severe impairments of bipolar disorder and affective mood disorder.  (*Id.*)  At step three, he found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 59-61.)  At step

four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that [Plaintiff] has the
> [RFC] to perform a full range of work at all exertional levels but with the
> following nonexertional limitations: simple, routine, and repetitive tasks; work
> where others may be around but she is more off by herself; allowed to be off task
> for up to 5 percent of the work day; work in a low stress job defined as only
> occasional changes in the work setting; no assembly line work; and occasional
> interaction with co-workers and supervisors but no interaction with the public.

(R. at 61.)  In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning

the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  (R. at

62.)  The ALJ assessed "great weight" to the opinions of the state-agency psychological

consultants.  (R. at 63.)  He assigned "little weight" to the opinions of the independent

consultative examiner, Dr. Rowland, and Plaintiff's treating psychiatrist, Dr. Agabalyan.  (R. at

63-64.)

At step four, the ALJ concluded that Plaintiff has no past relevant work.  At step five,

relying on the VE's testimony, he found that Plaintiff is able to perform jobs that exist in

significant numbers in the national economy.  (R. at 65.)  The ALJ therefore concluded that

Plaintiff was not disabled under the Social Security Act.  (R. at 66-67.)

On July 11, 2014, the Appeals Council denied Plaintiff's request for review and adopted

the ALJ's decision as the Commissioner's final decision.  (R. at 1–4.)  Plaintiff then timely

commenced the instant action.

## II.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III.   ANALYSIS

Plaintiff raises three statements of error. First, she contends that the ALJ improperly failed to assign controlling weight to Plaintiff's treating psychiatrist, Dr. Agabalyan, and instead

4

relied on the state-agency psychologists' opinions. Second, she asserts that the Appeals Council failed to consider new and material evidence that related to the period before the date of the ALJ's hearing. Third, Plaintiff contends that the ALJ improperly weighed the opinion of the consultative evaluator, Dr. Rowland. The Undersigned will consider each of Plaintiff's contentions or error, beginning with the ALJ's weighing of the medical opinions.

## A.    Weighing of Medical Opinions

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique prospective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling

weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id*.  Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion."  20 C.F.R. § 416.927(c)(2).  Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. Apr. 28, 2010) (internal quotation omitted).  The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied."  *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.  *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.  Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled."  *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision.  *See Tilley v. Comm'r of Soc. Sec.*, No. 09-6081, 2010 WL 3521928, at *6 (6th Cir. Aug. 31, 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. §

6

404.1527(c)(2) for weighing medical opinion evidence within the written decision).

**1. Dr. Agabalyan, Plaintiff's Treating Psychiatrist**

Dr. Agabalyan diagnosed Plaintiff with mood disorder not otherwise specified and bipolar disorder. (R. at 606, 609.) She opined that Plaintiff would not be able to work for twelve months or more, and stated that her opinion was based on clinical interview, old records, and self reports. (R. at 607.)

In his decision, the ALJ acknowledged that Dr. Agabalyan, Plaintiff's psychiatrist, is a treating source. The ALJ found, however, that Dr. Agabalyan's opinion is not entitled to controlling weight and ultimately assigned "little weight" to her opinions, explaining as follows:

> I give little weight to the opinion of Dr. Agabalyan, the [Plaintiff's] treating psychiatrist who opined in a form for the Ohio Department of Job and Family Services that the [Plaintiff] was unemployable for 12 months or more (Exhibit 17F). Dr. Agabalyan's opinion is conclus[or]y and fails to specify the [Plaintiff's] specific functional capabilities and deficits. Moreover, Dr. Agabalyan's opinion is contradicted by normal mental status findings from other treating sources, the [Plaintiff's] conservative mental health treatment history, and the [Plaintiff's] high functioning activities of daily living that include childcare, household chores, and work activity (Exhibits 3E, 5F, 11F, 13E, 13F, 14F, & 16F). Lastly, Dr. Agabalyan indicated that he based his opinion on his clinical interview, old records and self-reports of the [Plaintiff], which demonstrate that he relied quite heavily on the subjective report of symptoms and limitations provided by the [Plaintiff], and seemed to uncritically accept as true most, if not all, of what the [Plaintiff] reported. Yet, there exist good reasons for questioning the reliability of the [Plaintiff's] subjective complaints as evidenced by the [Plaintiff's] extreme allegations and inconsistent statement[s] discussed throughout this decision.

(R. at 64.)

Contrary to Plaintiff's assertion, the ALJ provided several "good reasons" for rejecting Dr. Agabalyan's opinion as controlling and assigning it "little weight." For example, the ALJ properly discounted Dr. Agabalyan's opinion as contradicted by evidence in the record that demonstrated normal mental status findings, conservative mental health treatment, and high

functioning activities of daily living.  *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001

(6th Cir. 2011) (concluding that the ALJ met the "good reasons" requirement for a variety of

reasons, including by noting that the treating physician's findings were "unsupported by

objective medical findings and inconsistent with the record as a whole"); *see also* 20 C.F.R. §

404.1527(d)(3) (identifying "supportability" and "consistency" with the record as a whole as

relevant considerations).  Additionally, the ALJ properly discounted Dr. Agabalyan's opinion

because it was conclusory and failed to specify Plaintiff's specific capabilities and limitations.

*See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ "is not bound by

conclusory statements of doctors, particularly where they are unsupported by detailed objective

criteria and documentation"); *see also* 20 C.F.R. § 404.1527(d)(3) (identifying "supportability"

as a relevant consideration).  Finally, he properly discounted Dr. Agabalyan's opinion because he

found it was heavily based on Plaintiff's subjective complaints, which the ALJ found to be not

entirely credible.  *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273-74 (6th Cir. 2010)

(concluding that the ALJ did not err in rejecting a medical opinion based on the claimant's

subjective complaints, which were not supported by objective medical evidence); *see also* 20

C.F.R. § 404.1527(d)(3).

Furthermore, substantial evidence supports the ALJ's stated reasons for discounting Dr.

Agabalyan's opinion.  First, substantial evidence supports the ALJ's finding that Dr.

Agabaylan's opinion is conclusory and fails to specify Plaintiff's specific capabilities and

limitations.  Plaintiff contends that "[e]ven if Dr. Agabalyan's opinion is conclusory in nature, it

should not take away from her opinion as a whole."  (Pl.'s St. of Errors 13, ECF No. 9.)  This

contention is unavailing.  An ALJ is not bound by conclusory statements of a treating source,

8

particularly where he finds the opinion to be contradicted by other evidence in the record, as the

ALJ did in this case.  *See Buxton*, 246 F.3d at 773.  Given that Dr. Agabalyan did not cite any

specific objective findings to support her opinion, the ALJ reasonably discounted it.

Additionally, substantial evidence supports the ALJ's finding that "Dr. Agabalyan's

opinion is contradicted by normal mental status findings from other treating sources, the

[Plaintiff's] conservative mental health treatment history, and the [Plaintiff's] high functioning

activities of daily living that include childcare, household chores, and work activity."  (R. at 64.)

For example, with regards to Plaintiff's conservative mental health treatment history, the ALJ

found as follows:[3]

> The [Plaintiff] has generally not received the type of medical treatment one would
> expect for a totally disabled individual.  Although the [Plaintiff] has received
> intermittent psychiatric treatment from Dr. Agabalyan, the [Plaintiff] has never
> had a psychiatric hospitalization despite extreme social functioning allegations.
> Additionally, the [Plaintiff] has not received mental health counseling in
> conjunction with her psychiatric medication management.  Finally, it should be
> noted that the [Plaintiff] has no history of criminal arrests or convictions although
> she has repeatedly reported violent or homicidal ideations in her function reports
> and testimony (Exhibits 5E & 13E.)  One would expect the [Plaintiff] to have a
> criminal arrest or conviction history that was consistent with the [Plaintiff's]
> alleged extreme difficulties in social functioning.

(R. at 62.)

The ALJ also concluded that Plaintiff's treatment notes and mental status examinations

are inconsistent with the extreme opinion of Dr. Agabalyan.  In this regard, the ALJ found as

follows:

> . . . On June 22, 2011, Dr. Agabalyan, the [Plaintiff's] treating psychiatrist, noted
> that the [Plaintiff's] mood was improved and she has not had any temper issues
> (Exhibit 13F, page 3).  Similarly, on June 22, 2011, the [Plaintiff's] treating nurse

---

[3]Although the ALJ presents this evidence in his discussion of Plaintiff's credibility, it is
apparent that he also relied on this evidence in assessing the weight assigned to the medical
opinions.

> practitioner found that the [Plaintiff] presented with a normal affect, an appropriate mood, good interaction and eye contact, no delusions or hallucinations, and good insight and judgment (Exhibit 11F, page 11). On November 18, 2011, the attending emergency department physician's psychiatric evaluation was normal. Specifically, the [Plaintiff] was found to have an appropriate affect and demeanor with normal interpersonal interactions (Exhibit 15F, page 5). On April 13, 2012, Dr. Agabalyan noted that the [Plaintiff's] depression was better although she continued to report difficulty with her temper (Exhibit 13F, page 4). Most recently, the [Plaintiff] was examined on November 16, 2012 by her treating nurse practitioner for a wellness exam who found that the [Plaintiff] was alert and cooperative with a normal affect (Exhibit 16F, pages 5-6). Although the [Plaintiff] testified that her medication[']s side effects [] include drowsiness and feeling drunk when she wakes up in the morning, Dr. Agabalyan repeatedly indicated that the [Plaintiff] did not report any adverse medication side effects (Exhibit 13F).

*Id.* Finally, the ALJ explained that Plaintiff's activities of daily living are inconsistent with disabling symptoms and limitations. The ALJ provided as follows:

> . . . the [Plaintiff's] daily activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. For instance, the [Plaintiff] has worked part time and full time on occasions throughout her alleged period of disability. While the counsel may argue that most of [Plaintiff's] jobs were short term jobs where she resigned because of difficulty getting along with others, the [Plaintiff] worked on and off for one employer for over six years (Exhibits 1E & 4D). Although the [Plaintiff's] work activity did not constitute disqualifying substantial gainful activity, it does indicate that the [Plaintiff's] daily activities have been much greater than the [Plaintiff] has generally reported. The [Plaintiff's] daily activities have also included childcare, which can be quite demanding both physically and emotionally, without any particular assistance. Specifically, the record indicates that the [Plaintiff] is a doting mother who has a close relationship with her children. The [Plaintiff] gets her daughter up and off to school every morning, prepares her meals, and plays with and cleans up after both of her children. The [Plaintiff] also reported [that she is] able to attend to her own personal care, prepare complete meals for herself and her children, and do household chores, which include laundry, dishes, sweeping, and mopping. The [Plaintiff] indicated that it takes three hours to clean her apartment and up to two hours to prepare meals for her family (Exhibits 5E & 13E). Despite alleging debilitating social functioning and concentration deficits, the [Plaintiff] is also able to shop in stores once or twice a week, handle her family's finances, care for pets, drive an automobile, read, watch television, paint and do puzzles, and attend medical appointments where she [was] described as pleasant and cooperative (Exhibits 5E, 5F, & 13F).

10

(R. at 62-63.)

After reviewing the record in its entirety, the Undersigned concludes that substantial evidence supports the ALJ's finding.  Dr. Agabalyan's opinions are contradicted by, and therefore inconsistent with, substantial evidence in the record, including Plaintiff's normal mental status findings from other treating sources, conservative mental health treatment history, and activities of daily living.

Plaintiff contends, however, that the ALJ "barely mentioned any of Dr. Agabalyan's findings or observations prior to assigning her opinion weight, and chose to mention the few comments that depicted those rare occasions when plaintiff superficially appeared to be a more stable individual."  (Pl.'s St. of Errors 9, ECF No. 9.)  She further contends that the ALJ's comments do not paint an adequate picture of what Dr. Agabalyan's treating notes signify.  More specifically, Plaintiff asserts that the ALJ failed to consider that Dr. Agabalyan noted that Plaintiff had on-going problems maintaining her temper; that she displayed severe anger; had mood swings, bipolar disorder, and mood disorder NOS; and that she had a GAF score of 53.[4] (Pl.'s St. or Errors 9-10, ECF No. 9) (citing 606, 566).)

---

[4]The GAF scale is used to report a clinician's judgment of an individual's overall level of functioning. Clinicians select a specific GAF score within the ten-point range by evaluating whether the individual is functioning at the higher or lower end of the range. *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33-34. "A 41–50 reflects the assessor's opinion that the subject has serious symptoms *or* serious impairment of social or occupational functioning.  Likewise, a 51–60 reflects the opinion that the subject has moderate symptoms *or* moderate impairment of social or occupational functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x. 496, 511 (6th Cir. 2006).

The Undersigned notes, however, that "the Commissioner has declined to endorse the GAF score for use in the Social Security and SSI disability programs, and has indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings." *Kennedy v. Astrue,* 247 F. App'x 761, 766 (6th Cir. 2007) (internal quotation marks and citations omitted).

Plaintiff also asserts that Dr. Agabalyan's opinions are consistent with the clinical findings of Plaintiff's treating certified nurse practitioner, John Bova ("CNP Bova"), and the Social Security consultative examiner, Dr. Rowland.  Plaintiff explains that CNP Bova reported that Plaintiff's medication made her fatigued  and caused her to have suicidal ideations; that she had paranoid thoughts, agitated mood, anxiety, anger control issues, and work and social stress; and that in a session with him, she was angry,  cursing, and exhibited an irritable mood.  *Id.* at 10 (citing R. at 357, 359, 389, 392, 394).  Finally, Plaintiff asserts that Dr. Rowland's opinion also supports Dr. Agabalyan's opinion.   She points out that Dr. Rowland found that her ability to understand, remember and carry out instructions would vary because she performed below average on her mental status examination related to attention, concentration, and mental control; that her ability to maintain attention, concentration, persistence, and pace would be problematic; that her ability to respond appropriately to work pressures would likely be problematic; and that her bipolar disorder was barely under control and it is not likely that she will be able to maintain stability.  *Id.* at 10-11 (citing R. at 385-86).  Plaintiff also asserts that Dr. Rowland noted that she was depressed, exhibited a broad range of affect, had bipolar disorder, and a GAF score of 50.[5]  *Id.*

While Plaintiff does indeed present evidence that supports Dr. Agabalyan's opinion, her contention that the ALJ erred in finding Dr. Agabalyan's opinion contradicted by the record is unavailing.  An ALJ is not required to discuss every piece of evidence in the record.  *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 753 (6th Cir. 2011).  Nonetheless, "it is not enough to

---

[5]The Undersigned notes that the ALJ did, in fact, explicitly consider the evidence from Dr. Rowland's report in weighing the medical opinions and formulating Plaintiff's RFC.  This evidence is discussed in more detail *infra* during the discussion of the weight assigned to Dr. Rowland's opinions.

dismiss a treating physician's opinion as 'incompatible' with other evidence of the record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Id.* at 753 (quoting *Friend*, 375 F. App'x at 552) (emphasis omitted).  Here, as explained in detail above, the ALJ *did* explain the discrepancies in the evidence, including treatment notes, conservative treatment history, and high functioning activities of daily living.  Thus, while the ALJ did not specifically mention certain treatments notes provided by Dr. Agabalyan, he did identify specific discrepancies and explain why her opinion was only entitled to "little weight."  Furthermore, a review of Plaintiff's RFC demonstrates that the ALJ reviewed her symptoms and added limitations where he found them to be credible.

Plaintiff also objects to the ALJ's consideration of her work history and lack of psychiatric hospitalization and criminal arrest history to support his finding that Plaintiff is not as limited as Dr. Agabaylan suggests.  Regarding her work history, Plaintiff points out that she was fired from her last job and reported that she had conflict with customers on several occasions, including an instance where she almost struck a customer with a beer bottle.  She states that, under these circumstances, the ALJ should not use her work history to justify his finding that she is not limited as suggested.[6]  The ALJ properly considered this evidence.  While Plaintiff reported that she had conflicts at work, she also reported that she never actually fought anyone.  Further, as the ALJ stated, Putnam Beer Dock continued to re-hire Plaintiff over the years, which

---

[6]The Undersigned also notes that the ALJ found that Plaintiff was not entirely credible, a finding that Plaintiff does challenge in her Statement of Errors.  The ALJ's credibility assessment is important in this case, because as discussed *infra*, Plaintiff found that Dr. Agabaylan heavily relied on Plaintiff's subjective reports.

supplies evidence to support the ALJ's conclusion that Plaintiff's temper was not as severe as she or Dr. Agabalyan describes.

The ALJ also properly considered that Plaintiff had never been hospitalized due to psychiatric problems or arrested/ convicted of a crime, given the extreme temper issues she reported.   Plaintiff's lack of hospitalization is further evidence of conservative treatment, which demonstrates that Plaintiff is not as limited as suggested by Dr. Agabalyan.  The ALJ properly considered this evidence.  *See LeFevers v. Comm'r of Soc. Sec.*, 476 F. App'x 608, 610 (6th Cir. 2012) (finding that the ALJ permissibly opted not to give treating physician controlling weight where conservative treatment was inconsistent with treating physician's assessments of impairments).  Furthermore, contrary to Plaintiff's assertion, the ALJ did not suggest that Plaintiff had to have been hospitalized or arrested to support her claim; he is simply stating that given the subjective reports of temper, anger, confrontation, and homicidal ideations, one might expect Plaintiff to have received inpatient psychiatric care or faced criminal charges.  Lack of such evidence indicates that Plaintiff's symptoms may not be as severe as suggested by Plaintiff and Dr. Agabaylan.  Accordingly, the ALJ appropriately considered these factors in his decision.

Thus, because the ALJ thoroughly explained the substantial evidence that supports his finding that Dr. Agabalyan's opinion is contradicted by other evidence in the record, his decision must stand.  *See Karger*, 414 F. App'x at 750 ("If the Commissioner's determination is supported by substantial evidence, it must stand regardless of whether a court might have resolved the disputed issues differently in the first instance.").

Finally, substantial evidence supports the ALJ's decision to discount Dr. Agabalyan's opinion because it relies heavily on Plaintiff's subjective complaints, which the ALJ found to be

14

not fully credible.  In her opinion, Dr. Agabalyan noted that she based her opinion on a "clinical interview, old records, and self-reports."  (R. at 607.)  A review of Dr. Agabalyan's treatment notes demonstrates that, on mental examination on February 24, 2012, Plaintiff was well-groomed and cooperative, and exhibited an average demeanor, angry mood, and constricted affect.  (R. at 566.)  Given the largely normal examination, it appears that Dr. Agabalyan relied heavily on Plaintiff's subjective reports.  While Dr. Agabaylan noted that Plaintiff's mood swings are uncontrollable and that she is unable to work because of her temper, Dr. Agabaylan does not point to any specific signs or symptoms to support her findings.  The ALJ therefore reasonably concluded that Dr. Agabaylan relied heavily upon Plaintiff's subjective reports, which he found not fully credible, in rendering her opinion.  This constitutes a good reason, supported by substantial evidence, for discounting Dr. Agabaylan's opinion.  *See Ferguson*, 628 at 273-74 (concluding that the ALJ did not err in rejecting a medical opinion based on the claimant's subjective complaints, which were not supported by objective medical evidence).

Because the ALJ's findings are supported by substantial evidence, this Court defers to those findings "even if there is substantial evidence in the record that would have supported an opposite conclusion."  *Blakley*, 581 F.3d at 406 (internal citations omitted).  It is therefore **RECOMMENDED** that Plaintiff's contention of error be **OVERRULED**.

2.    **State-Agency Psychologists**

Plaintiff contends that the ALJ improperly assigned the greatest weight to the opinions of the non-examining state-agency psychologists because they did not review the entire record.[7] The Undersigned disagrees.

---

[7]On July 15, 2011, state-agency psychologist, Bruce Goldsmith, Ph.D., found that Plaintiff had mild restriction of activities of daily living; moderate difficulties maintaining social functioning;

The ALJ properly assigned the state-agency psychologists' opinions "great weight." "'Administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled.'"  *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(f)(2)(i)).  The Sixth Circuit has explained that

> opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

Here, the ALJ weighed the state agency opinions and explained his findings as follows:

> I give great weight to the opinion of the state agency psychological consultants who opined that the [Plaintiff] is capable of simple, routine tasks with no rapid pace demands, minimal social distractions, infrequent changes, and occasional and superficial interpersonal contact (Exhibits 1A, 2A, 5A, & 6A).  The state agency psychological opinion is well supported by generally normal mental status examinations throughout the record, the [Plaintiff's] conservative mental health treatment history with no psychiatric hospitalizations or mental health counseling,

---

moderate difficulties maintaining concentration, persistence, or pace; and no episodes of decompensation. (R. at 114.)  He concluded that Plaintiff is limited to simple task instructions and simple tasks that are not fast paced and do not have strict demands.  He also concluded that Plaintiff is limited to occasional and superficial interpersonal contact.  (R. at 117.)
Regarding Plaintiff's adaptive limitations, Dr. Goldsmith concluded that Plaintiff is limited to an environment with infrequent changes.  *Id.*
On November 18, 2011, state-agency psychologist, Jennifer Swain, Psy. D., essentially affirmed Dr. Goldsmith's opinion with the following additional limitations.  She concluded that Plaintiff is limited to routine tasks in a setting where there are no demands for a rapid pace and regular breaks are offered.  She further concluded that Plaintiff would likely perform best in a setting with minimal social distractions.  (R. at 138-42.)

and the [Plaintiff's] high functioning activities of daily living, which include childcare and work activity (Exhibits 5E, 5F, 11F, 13E, 13F, 14F, & 16F).

(R. at 63.)  The ALJ properly followed SSA regulations in assessing the state-agency psychologists' opinions.  While the state-agency psychologists did not have access to the entire record at the time they rendered their opinion, the ALJ considered all of the evidence in the record, including the treatment records from Dr. Agabalyan that were later submitted.  As the ALJ explained in his decision, he found that the state-agency psychologists' opinions were "well supported by generally normal mental status examinations throughout the record, the [Plaintiff's] conservative mental health treatment history with no psychiatric hospitalizations or mental health counseling, and the [Plaintiff's] high functioning activities of daily living, which include childcare and work activity." (R. at 63.)  Further, a review of the ALJ's decision demonstrates that the ALJ took into account subsequent medical evidence in determining Plaintiff's RFC and in concluding that the state-agency opinions were most consistent with the totality of the evidence.  (R. at 61-64.)  Under these circumstances, the ALJ did not err in affording the greatest weight to the opinions of the state-agency psychologists.  *See Ruby v. Colvin*, No. 2:13-CV-01254, 2015 WL 1000672, at *4 (S.D. Ohio Mar. 5, 2015) ("[S]o long as an ALJ considers additional evidence occurring after a state agency physician's opinion, he has not abused his discretion.") (citing *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009); *Ballard v. Comm'r of Soc. Sec.*, No. 1:13-CV-842, 2015 WL 457300, at *9 (S.D. Ohio Feb. 3, 2015)).  Accordingly, it is **RECOMMENDED** that Plaintiff's Statement of Error be **OVERRULED**.

### 3.   Dr. Rowland, Consultative Examiner

Plaintiff contends that the ALJ improperly evaluated the opinion of consultative

examiner, Dr. Rowland.[8]  While an ALJ must consider the opinion of a consultative examiner, he or she does not have to assess the opinion for controlling weight.  *Gayheart*, 710 F.3d at 376. "The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion."  *Id.* (internal citations omitted).

The ALJ considered consultative examiner Dr. Rowland's opinion and assessed it little weight, explaining as follows:

> I give little weight to the opinion of Dr. Rowland, the independent consultative examiner for mental impairments.  Dr. Rowland opined that the [Plaintiff's] abilities to maintain attention and concentration as well as respond appropriately to work pressures were likely to be problematic (Exhibit 5F, pages 9-10).  Dr. Rowland's opinion that the [Plaintiff's] concentration and social functioning deficits were problematic is vague.  The evidence supports limitations in these areas of mental functioning, but Dr. Rowland fails to quantify how problematic.  Additionally, Dr. Rowland opined that it was not likely that the [Plaintiff] would be able to maintain stability with her bipolar disorder (Exhibit 5F, page 10).  Dr. Rowland's opinion with respect to the [Plaintiff's] stability is contradicted by her high functioning activities of daily living that include childcare, household chores, and part time as well as occasional fulltime work activity (Exhibits 3E, 5F & 13E).  Lastly, counsel maintained that Dr. Rowland's GAF finding of 50 supports

---

[8]Dr. Rowland opined that Plaintiff's abilities and limitations in understanding, remembering, and carrying out instructions "may be variable."  (R. at 385.)  He explained that Plaintiff "performed below average on key items on the mental status examination related to attention, concentration, and mental control," but that she "appears to be an individual with at least average general intellectual ability, but one who is not inclined to apply it." *Id.*

He also opined that Plaintiff's abilities and limitations in maintaining attention, concentration, and in maintaining persistence and pace to perform simple tasks and to perform multi-step tasks are "likely [] be problematic and variable" due to Plaintiff' bipolar disorder.  *Id.*

Dr. Rowland further opined that Plaintiff's abilities and limitations in responding appropriately to work pressures in a work setting are "likely to be a problem."  (R. at 386.)  He explained that her "bipolar disorder is barely under control with medication under current circumstances including the pressure of employment.  It is not likely that she would be able to maintain stability."  *Id.*

a finding of disability (Exhibit 17E).  However, GAF scores are afforded little weight in the disability process because they do not describe specific work related limitations or objective mental abnormalities. . . . In sum, Dr. Rowland's opinion is without substantial support from mental status findings throughout the record, the claimant's conservative treatment history with no prior psychiatric hospitalizations or mental health counseling, and high functioning activities of daily living.

(R. at 63-64.)

Thus, the ALJ found that Dr. Rowland's opinions were vague, contradicted by Plaintiff's high functioning activities of daily living, and without substantial support from the mental status findings throughout out the record and conservative treatment history.  The Undersigned finds that the ALJ's reasons for affording little weight to Dr. Rowland's opinion are supported by substantial evidence.  As explained above, the record demonstrates that Plaintiff is able to care for her children, cook, clean, work, paint, and do puzzles.  (R. at 300-07, 324-31, 380-81.)  Additionally, Plaintiff has received no psychiatric hospitalization and limited counseling, despite her allegations of disabling mental impairments.  Additionally, treating sources in the record noted Plaintiff to be cooperative, have normal affect, appropriate mood, and good interaction at various times.  (R. at 508, 566, 591, 592.)

Finally, given Dr. Rowland's vague opinion that Plaintiff's abilities to maintain attention and concentration as well as respond appropriately to work pressures were "likely to be problematic," the ALJ reasonably discounted it.  Nonetheless, it is evident that the ALJ did consider this evidence, as he stated that "the evidence supports limitations in these areas of mental functioning, Dr. Rowland just failed to quantify how problematic."  (R. at 63.)  A review of Plaintiff's RFC reveals that limitations were added related to her ability to maintain attention and concentration and to respond to work pressures.  (R. at 61.)

Plaintiff points to evidence to support Dr. Rowland's conclusions, including that Plaintiff exhibited a depressed mood and broad range of affect; struggled with certain cognitive tests, including naming where Brazil is located; and that Plaintiff was assessed with bipolar disorder and a GAF score of 50.  (Pl.'s St. of Errors 18, ECF No. 9) (citing to R. at 382-84).)  This evidence, however, does not demonstrate that the ALJ's decision to assess "little weight" to the Dr. Rowland's opinion is not supported by substantial evidence.  Furthermore, as stated above and explained by the ALJ, GAF scores are not entitled to any special deference.  *See Kennedy*, 247 F. App'x at 766.

A review of the ALJ's decision demonstrates that the considered factors set out in Section 404.1527(c) in weighing Dr. Rowland's opinion.  Because the ALJ found that Dr. Rowland's opinion lacks supportability and consistency with the record as a whole, he assessed it little weight.  Given that this finding is supported by substantial evidence, "this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley*, 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, Plaintiff's contention that the ALJ had a duty to seek clarification of Dr. Rowland's opinion is unavailing.  The Sixth Circuit has explained that "[t]he claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits." *Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003) (citing 20 C.F.R. § 404.1512(a)).  While an ALJ has a basic duty to develop a full and fair record, "only under special circumstances, *i.e*., when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened

duty to develop the record." *Id.* (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir.1986); *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051–52 (6th Cir.1983)).  Furthermore, an ALJ has discretion to determine whether additional evidence is needed to render a decision.  *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010.)

In this case, Plaintiff was represented by counsel at the hearing.  The ALJ therefore had no heightened duty to develop the record.  Furthermore, the ALJ did not abuse his discretion in not asking Dr. Rowland to clarify his opinion.  Accordingly, it is **RECOMMENDED** that Plaintiff's Statement of Error related to Dr. Rowland be **OVERRULED**.

**B.   New and Material Evidence**

Finally, Plaintiff contends that the Appeals Council erred in failing to consider new and material evidence.  In this regard, Plaintiff contends that the Appeals Council failed to follow Social Security Regulations, which provide as follows:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

*Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993) (citing 20 C.F.R. § 404.976(b)).

Here, Plaintiff contends that the Appeals Council erred because it did not explicitly mention and/or consider an assessment form completed by Dr. Agabalyan that relates to the period on or before the date of the ALJ's decision.  Plaintiff contends that because this assessment form constitutes new and material evidence, the Court should reverse the decision

21

and award full benefits.  This contention is without merit.

It is well-settled in the Sixth Circuit that courts reviewing claims for Social Security benefits cannot reverse the Commissioner's decision denying benefits based on evidence presented for first time to the Appeals Council.  *Id.* at 695.  Further, where the Appeals Council denies review, "this Court is charged with reviewing the decision of the ALJ, and not the denial of review by the Appeals Council, because when the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Commissioner."  *Osburn v. Apfel*, 1999 WL 503528, at *4 (6th Cir. Jul. 9, 1999) (citing *Casey v. Sec. of HHS*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Accordingly, contrary to Plaintiff's assertion, because the Appeals Council denied review in this case, the ALJ's decision is the final decision of the Commissioner and this Court cannot review the Appeals Council's decision for error.

Thus, the only circumstance under which the alleged new and material evidence will be reviewed is if this Court finds that a Sentence six remand is proper.  Sentence six of 42 U.S.C. § 405(g) provides in relevant part as follows:

> The Court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42. U.S.C. § 405(g).  "Sentence-six remands may be ordered in only two situations: where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency."  *Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993) (citations omitted).  The requirements that the evidence be "new" and "material," and that "good cause" be shown for the failure to present the evidence to the ALJ

22

have been defined by the United States Court of Appeals for the Sixth Circuit as follows:

> "For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.' . . .  Such evidence is 'material' only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.' . . . A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ . . . .  [T]he burden of showing that a remand is appropriate is on the claimant."

*Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

Here, Plaintiff has not demonstrated good cause for her failure to present the alleged new and material evidence for the ALJ to consider before the hearing.[9]  She provides no explanation for why her treating physician did not submit a more comprehensive opinion prior to the hearing. Accordingly, Plaintiff has not demonstrated that remand is appropriate.  It is therefore **RECOMMENDED** that Plaintiff's Statement of Error be **OVERRULED.**

## IV.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## V.   PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in

---

[9]This finding obviates the need to consider whether the additional evidence is indeed new and material.

question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex*

*Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

magistrate judge's report and recommendation).  Even when timely objections are filed,

appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d

981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation

omitted)).

Date: August 12, 2015                                          */s/ Elizabeth A. Preston Deavers*
                                                                                          Elizabeth A. Preston Deavers
                                                                                          United States Magistrate Judge